UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE | **18 MISC 320** |

Misc. Action No. _____



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE
PRESS TO UNSEAL CERTAIN SEARCH WARRANT APPLICATIONS AND
RELATED JUDICIAL DOCUMENTS

Katie Townsend
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel for the Reporters Committee for Freedom
of the Press*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

STATUTORY BACKGROUND ......................................................................................... 2

ARGUMENT .................................................................................................................. 4

    I.    The press and the public have a presumptive right of access to the judicial documents at
          issue here under the First Amendment and common law. ................................................. 4

      a.    SCA Search Warrant materials are judicial documents to which the presumption of
             access applies. ...................................................................................................... 4

      b.    The public has both a constitutional and common law right of access to court dockets
             and docket information........................................................................................... 6

    II.   The public has a particularly strong interest in access to court dockets and other judicial
          documents related to SCA Search Warrants. .................................................................. 8

    III.  SCA Search Warrant materials are presumptively open under the common law............. 12

    IV.  The First Amendment also affords a right of access to SCA Search Warrant materials. . 16

CONCLUSION............................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989).................................................. 13, 18, 19

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016).... *passim*

*CBS Inc. v. U.S. District Court for Cent. Dist. of California*, 765 F.2d 823 (9th Cir. 1985) ......... 8

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ...................................................................... 7

*Fed. Trade Comm'n v. Abbvie Prods. LLC*, 713 F.3d 54 (11th Cir. 2013) .................................. 6

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) ............................................. 9

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) .................................................. 17

*Hardy, et al., v. Kaszycki & Sons, et al.*, Case No. 1:83-cv-06346, 2017 WL 6805707 (S.D.N.Y. filed Nov. 21, 2017).................................................................................................................. 8

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)............................................. 6, 15

*In re Application and Affidavit for a Search Warrant*, 923 F.2d 324 (4th Cir. 1991) ................. 14

*In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83 (D.D.C. 2008) .................................................................................................................. 18, 19

*In re EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996).......................................... 13

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) ............................................................... 7

*In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987)............................................................. 22

*In re Sealed Search Warrants Issued June 4 and 5, 2008*, 2008 WL 5667021 (N.D.N.Y. Jul. 14, 2008) ................................................................................................................................ 12, 20

*In re Sealing & Non-Disclosure of PR/TT/2703(D) Orders*, 562 F. Supp. 2d 876 (S.D. Tex. 2008) .......................................................................................................................................... 15

*In re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012) ...................................................... 13

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) .............................................................................................................................................. 18, 19

*In re Search Warrant*, No. 16-MAG-7063, 2016 WL 7339113 (S.D.N.Y. Dec. 19, 2016) .. *passim*

*In re State-Record Co., Inc.*, 917 F.2d 124 (4th Cir. 1990) ......................................................... 16

*In re Wash. Post Co.*, 807 F.2d 383 (4th Cir. 1986) ................................................................... 7

*Lugosch v. Pyramid Co. of Onomdaga*, 435 F.3d 110 (2d Cir. 2006)................................... *passim*

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006)............................................................. 7

*Matter of Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 2018 WL 1129660 (D.D.C. Feb. 26, 2018) ......................................................................................... 20

*Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016), *cert. granted sub nom. United States v. Microsoft Corp.*, 138 S. Ct. 356 (2017), vacated and remanded, 138 S. Ct. 1186 (2018)................................... 21

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ............................................................ 8

*Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) ................................................ 4, 17

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ............................................................ 8

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press-Enterprise I*") .................... 4, 21

*Press-Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") ...... 17, 21, 22

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ............................................. 4, 5, 16

*Rushford v. New Yorker Magazine*, 846 F.2d 249 (4th Cir. 1988) ............................................. 17

*Smith v. United States Dist. Court for S. Distr. of Ill.*, 956 F.2d 647 (7th Cir. 1992) .................. 9

*Times Mirror Company v. United States*, 873 F.2d 1210 (9th Cir. 1989) .................................... 19

*Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477 (6th Cir. 2012) ......... 7

*United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577 (S.D.N.Y. 2009) ..................................................................................................................... 6, 12, 18

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ............................................. 4, 8, 13, 14

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) ................................................................ 9

*United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188 (9th Cir. 2011) ..................................................................................................................................... 13

*United States v. Criden*, 675 F.2d 550 (3d Cir. 1982) ............................................................ 7

*United States v. Erie Cty., N.Y.*, 763 F.3d 235 (2d Cir. 2014) ............................................ 8, 13

*United States v. Kott*, 380 F. Supp. 2d 1122 (C.D. Cal. 2004), *aff'd on other grounds*, 135 Fed. App'x 69 (9th Cir. 2005) .............................................................................................. 19

*United States v. Loughner*, 769 F. Supp. 2d 1188 (D. Ariz. 2011) ........................................ 19, 20

*United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012) ...................................................... 15

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) .......................................................... 7

**Statutes**

Stored Communications Act (SCA), 18 U.S.C. §§ 2701–2712 ........................................... 1, 2, 3, 5

Electronic Communications Privacy Act (ECPA) of 1986, 18 U.S.C. §§ 2510 *et seq* .................. 2

Fed. R. Crim. P. 41 .......................................................................................................... 2, 5

**Other Authorities**

Affidavit of Reginald B. Reyes, *Application for Search Warrant for E-mail Account [redacted]@gmail.com*, No. 1:10-mj-00291-AK (D.D.C., unsealed Nov. 7, 2011) ............... 11

Aliyah Frumin, *Holder greenlit search warrant for Fox reporter's emails*, NBC (May 24, 2013), *available at* https://perma.cc/488L-TM8D ........................................................................... 11

Ann E. Marimow, *Justice Department's scrutiny of Fox News reporter James Rosen in leak case draws fire*, Wash. Post (May 20, 2013), *available at* https://perma.cc/U25E-9AFU ......... 10, 11

*Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990) .................................................... 12, 13

*Coalition: Justice Department's demand for protest website data raises privacy and civil liberty concerns*, OpentheGovernment.org (Aug. 24, 2017), *available at* https://perma.cc/2XJU-S47M............................................................................................................................................. 11

Ellen Nakashima, *Justice Department moves to end routine gag orders on tech firms*, Wash. Post (Oct. 24, 2017), https://wapo.st/2tMrpKG .................................................................................. 3

Google Transparency Report Data, *available at* https://transparencyreport.google.com/user-data/overview............................................................................................................................ 9, 10

Google Transparency Report, *available at* https://perma.cc/LL9U-JFKD ..................................... 3

Laurel Wamsley, *Judge Limits DOJ's Warrant For Records From Anti-Trump Site*, NPR (Oct. 11, 2017), *available at* https://n.pr/2lNkxcn.................................................................................. 11

Peter J. Henning, *Digital Privacy to Come Under Supreme Court's Scrutiny*, N.Y. Times (Jul. 10, 2017), *available at* https://nyti.ms/2u13MAk.................................................................... 12

Ryan Lizza, *How Prosecutors Fought to Keep Rosen's Warrant Secret,* The New Yorker (May 24, 2013), *available at* http://bit.ly/1TD3How ...................................................................... 11

Spencer S. Hsu, *This Judge Just Released 200 Secret Government Surveillance Requests*, Wash. Post (Oct. 24, 2016), *available at* https://perma.cc/4USX-U87S ........................................... 12

Stephen W. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harvard L. & Policy Rev. 313 (2012)............................................................................................... 3, 10, 18

## INTRODUCTION

By its Application, the Reporters Committee for Freedom of the Press ("Reporters Committee") seeks public access to court dockets and judicial documents for one calendar year (2017) of search warrants sought by government entities from the U.S. District Court for the Southern District of New York pursuant to the Stored Communications Act ("SCA"), *see* 18 U.S.C. §§ 2701–2712 (hereinafter, "SCA Search Warrant materials").

As discussed below, the SCA provides that a governmental entity may require an electronic communication service provider to disclose the contents of a wire or electronic communication, or a record of other information pertaining to a subscriber or customer, by "obtain[ing] a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction" (hereinafter, an "SCA Search Warrant"). 18 U.S.C. § 2703(a)–(c). Petitioner is informed and believes that the U.S. Attorney's Office for the Southern District of New York ("USAO") routinely files applications for SCA Search Warrants under seal, and in most instances, SCA Search Warrant materials and related docket information remain under seal indefinitely.

Routine, indefinite sealing of SCA Search Warrant materials is inconsistent with the presumption of public access to judicial records guaranteed by the First Amendment and federal common law. The public's constitutional and common law rights of access to judicial documents extend not only to SCA Search Warrant materials in now-closed criminal investigations, but also to all dockets and docket entries reflecting SCA Search Warrant applications and related judicial documents filed with the Court. By this Application, the Reporters Committee respectfully seeks access to SCA Search Warrant materials from 2017, including all dockets reflecting SCA Search Warrant applications filed with the Court that year.

1

Public access to these judicial documents will shed light on the Court's and the government's practices concerning the use of SCA Search Warrants to obtain electronic communications records held by third-parties, including the contents of e-mail communications.

## STATUTORY BACKGROUND

The Electronic Communications Privacy Act ("ECPA") of 1986, 18 U.S.C. §§ 2510 *et seq.*, governs government surveillance of wire, oral, and electronic communications while those communications are in transit and when they are stored electronically. The ECPA has three titles, one of which is at issue here. Title II of the ECPA is the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.*, which provides government entities with mechanisms to compel third-party electronic communication service or remote computing service providers to disclose the contents of stored wire and electronic communications, as well as records and other information pertaining to subscribers. Those mechanisms include search warrants "issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1)(A). The procedures for obtaining a search warrant are set forth in Rule 41 of the Federal Rules of Criminal Procedure.[2]

The SCA requires notice to the subscriber in some instances, *see, e.g.,* 18 U.S.C. § 2703(b), but allows notice to be withheld or delayed in other instances. *See, e.g.,* 18 U.S.C. § 2703(c)(3) ("A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."); 18 U.S.C. § 2705 (allowing the government to seek an order authorizing it to delay notification). When notice is not required or

---

[2] Unless otherwise stated, all references to the "Rules" herein are to the Federal Rules of Criminal Procedure.

may be delayed, the government may apply for a gag order prohibiting the third-party service provider to whom the warrant or order is directed from disclosing its existence to any person "for such period as the court deems appropriate[.]" 18 U.S.C. § 2705(b).[3]

Nothing in the SCA mandates sealing of SCA Search Warrants or judicial documents related thereto, yet such documents are frequently sealed and kept under seal indefinitely, as are the court dockets reflecting them. As a result, the public lacks information even as to the number of SCA Search Warrants issued by a particular district court in any given time period. The Reporters Committee does not know how many applications for SCA Search Warrants were filed in the U.S. District Court for the Southern District of New York in 2017.

There is reason to believe that, in total, a substantial number of SCA Search Warrants are sought by government entities from district courts across the country each year. Google, Inc. ("Google"), for example, has reported that it received 4,018 search warrants from the U.S. government in the last six months of 2016 alone. *See* Google Transparency Report, *available at* https://perma.cc/LL9U-JFKD. Writing about the ECPA dockets of federal district courts in 2012, Magistrate Judge Stephen W. Smith noted that "the number of ECPA cases filed in a single year surpasses the entire output of the FISA court since its creation in 1978," and, in one sample year (2006), "federal magistrate judges were presented with over 30,000 secret ECPA applications." *See* Stephen W. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harvard L. & Policy Rev. 313, 315, 322 (2012).

---

[3] In 2017, the Department of Justice implemented internal guidelines to address the problem of prosecutors requesting gag orders under this provision as a matter of course. *See* Ellen Nakashima, *Justice Department moves to end routine gag orders on tech firms*, Wash. Post (Oct. 24, 2017), https://wapo.st/2tMrpKG. This guidance reflects the government's own recognition of the need for increased transparency regarding its demands for individuals' electronic data from third-party service providers.

**ARGUMENT**

I.   **The press and the public have a presumptive right of access to the judicial documents at issue here under the First Amendment and common law.**

   a.   **SCA Search Warrant materials are judicial documents to which the presumption of access applies.**

A "[f]inding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013). The presumption of access to judicial documents is "secured by two independent sources: the First Amendment and the common law." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (citing *Lugosch v. Pyramid Co. of Onomdaga*, 435 F.3d 110, 121 (2d Cir. 2006)).

"The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). For centuries, openness of judicial proceedings and documents has been considered "an indispensable attribute" of our judicial system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980); *see also Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*") (explaining that openness "gives assurance that established procedures are being followed and that deviations will become known"). Openness is critical not only to actual fairness, but also to "the appearance of fairness so essential to public confidence in the system." *Press-Enterprise I*, 464 U.S. at 508. As the Supreme Court has explained, while "[p]eople in an open society do not demand infallibility from their institutions," it "is difficult for them to accept what they are

prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572.

Under Second Circuit precedent, a judicial document is a "filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein*, 814 F.3d at 139 (quoting *Lugosch*, 435 F.3d at 119). To determine whether a document meets this definition, courts "evaluate the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceeding." *Id.* (internal quotations, citation, and alterations omitted).

Under the SCA, courts are responsible for issuing search warrants that allow government entities to require an electronic communications service provider to disclose, *inter alia*, the contents of e-mail and other electronic communications. *See* 18 U.S.C. § 2703. Before a court issues a search warrant—pursuant to the SCA or otherwise—it must determine that there is probable cause, which it does by looking to the showing made by the government in its application and supporting documents, including any supporting affidavit. *See* 18 U.S.C. § 2703(a); Fed. R. Crim. P. 41(d)(1). The application and any supporting documents filed therewith by the government thus play a decisive role in the court's determination as to whether to issue an SCA search warrant; such materials are therefore clearly "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119.

Search warrant applications and materials filed in support of them are akin in many respects to pleadings, which "plainly" are judicial records. *Bernstein*, 814 F.3d at 140. As the Second Circuit has explained, "[a] complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Bernstein*, 814 F.3d at

140 (quoting *Fed. Trade Comm'n v. Abbvie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013)).

Similarly, materials filed with a court in support of an application for a search warrant initiate the

matter and are necessary to understanding the court's decision to issue (or not to issue) a search

warrant. Also like complaints, search warrants affect individuals' "substantive legal rights and

duties" *id.*, by determining whether there is probable cause to justify a government search of

records in which the individual has a Fourth Amendment expectation of privacy. *See In re*

*Search Warrant*, No. 16-MAG-7063, 2016 WL 7339113, at *2 (S.D.N.Y. Dec. 19, 2016)

("Search or seizure warrant applications and supporting affidavits are critical to judicial

determinations of whether the Fourth Amendment's probable cause standards are met."). Search

warrants are therefore not just relevant to the performance of a judicial function—they are

"necessary" to it. *Id.*

District courts in this district have previously recognized that search warrant applications

are judicial documents to which the presumption of access applies. *See In re Search Warrant*,

2016 WL 7339113, at *2 ("Search warrant applications require the close and careful scrutiny of a

judicial officer, and are thus judicial documents."); *United States v. All Funds on Deposit at*

*Wells Fargo Bank*, 643 F. Supp. 2d 577, 583–84 (S.D.N.Y. 2009) (finding that search warrants

are judicial documents).

### b.  The public has both a constitutional and common law right of access to court dockets and docket information.

The Second Circuit has held that the presumption of public access applies fully to dockets

and docket information. "Experience casts an affirming eye on the openness of docket sheets

and their historical counterparts," *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir.

2004), and, therefore, "the public and the media possess a qualified First Amendment right to

inspect" docket sheets. *Id.* at 96; *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.

2006) (finding that a court could take judicial notice of docket sheets in ruling on a motion to

dismiss because "docket sheets are public records"). Several other federal courts of appeals in

addition to the Second Circuit have recognized the public's constitutional right to inspect court

dockets. *See Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding that there is a First

Amendment right of access to dockets in civil proceedings); *Tri-Cty. Wholesale Distributors,

Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) ("The First Amendment access

right extends to court dockets, records, pleadings, and exhibits . . . ."); *see also United States v.

Criden*, 675 F.2d 550, 559 (3d Cir. 1982) ("The case dockets maintained by the clerk of the

district court are public records."). The Eleventh Circuit has specifically recognized that a "dual-

docketing system"—whereby certain dockets and docket information are "completely hid[den]

from public view"—is "an unconstitutional infringement" upon the public's right of access.

*United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993).

Dockets reflecting SCA Search Warrant matters are often indefinitely sealed and

unavailable to the public. This dual-docketing system unconstitutionally infringes upon the

public's right of access to court dockets, and undermines the presumption of openness applicable

to all judicial documents in real, tangible ways. Among other things, secret dockets in SCA

Search Warrant matters interfere with the public's right to request that records in particular

matters be unsealed, *id.*, and prevent the public from knowing even the number of applications

for such search warrants that have been or are being considered by courts. *See In re Wash. Post

Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (noting that publicly available dockets make it possible

for the public and press to "'intervene and present their objections to the court'" when court

records or proceedings are closed (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir.

1984)). The lack of publicly available dockets reflecting SCA Search Warrant matters erodes

public "[c]onfidence in the accuracy of [the court's] records" and "the authority of its rulings and respect due its judgments." *CBS Inc. v. U.S. District Court for Cent. Dist. of California*, 765 F.2d 823, 826 (9th Cir. 1985).

## II. The public has a particularly strong interest in access to court dockets and other judicial documents related to SCA Search Warrants.

Transparency is a structural necessity in a democracy. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Amodeo*, 71 F.3d at 1048 (in the context of evaluating the right of access to judicial records, explaining that "professional and public monitoring is an essential feature of democratic control"). With respect to the judicial branch, specifically, public access to court proceedings and records fosters respect for the rule of law and the role of the courts, serves as a check on the exercise of judicial power, and ensures that court decisions are well justified and well understood by the public at large. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J., concurring) ("Secrecy of judicial action can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges; free and robust reporting, criticism, and debate can contribute to public understanding of the rule of law."). Court transparency is a longstanding tradition; indeed, the common law presumption of access "is said to predate even the Constitution itself." *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014) (citation omitted).

The common law presumption of access to judicial records is weightier where the public's interest in access is particularly strong. *See, e.g., Hardy, et al., v. Kaszycki & Sons, et al.*, Case No. 1:83-cv-06346, 2017 WL 6805707, at *3 (S.D.N.Y. filed Nov. 21, 2017) (in applying the common law right of access, finding that when information "is of legitimate interest to the public, [ ] the Court's determination of the weight of the presumption of access may not ignore this broader context") (quotations and citation omitted). And the public's interest in

8

transparency is particularly pronounced where, as here, judicial matters concern all three branches of government. As the Second Circuit has found, "courts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of circumstances," especially "when a judicial decision accedes to the requests of a coordinate branch." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008). The SCA was enacted by Congress; it grants executive branch agencies specific powers to obtain electronic communications records, including the contents of e-mails, subject to judicial oversight. "[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Smith v. United States Dist. Court for S. Distr. of Ill.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

The public's interest in access here is also particularly strong because the government's use of judicially authorized demands to third-party service provides for electronic communications records under the SCA affects scores of Americans each year. Such matters occupy a significant portion of courts' dockets, and consume substantial law enforcement and judicial resources. Transparency reports from electronic communication providers suggest that successful applications for SCA Search Warrants are common, have increased over the years, and affect thousands of users. *See, e.g.,* Google Transparency Report Data, *available at* https://transparencyreport.google.com/user-data/overview. For instance, Google reported that in the last six months of 2017, it received 5,182 user data requests via search warrants from the U.S. government; that some data was produced in response to 86% of those requests; and that 10,237 users/accounts were specified. *Id.* By contrast, Google reported that in the last six months of 2012, it received 1,896 user data requests via search warrants from the U.S. government; that data was produced in response to 88% of those requests; and that 3,152

users/accounts were specified. *Id.* This data from only one electronic communication provider suggests that the government's use of search warrants to obtain information, including content information, from e-mail accounts has significantly increased in the past five years, and that the government currently is on pace to execute over 10,000 search warrants per year on Google alone. Moreover, because many orders obtained by government entities under the SCA are obtained in connection with investigations that never result in a prosecution, "it is reasonable to infer that far more law-abiding citizens than criminals" may be affected. Smith, *Gagged, Sealed & Delivered* at 328 n.83.

Public access to court dockets and other judicial documents for SCA Search Warrant matters filed in this district in 2017 will shed light on areas of significant public interest and concern. It will disclose, for example, the total number of SCA Search Warrant applications filed in this district for the most recent, full calendar year, and will reveal instances in which those applications were denied. Access to such information empowers the public to effectively participate in ongoing policy debates about the government's use of SCA Search Warrants.

In addition, public access will shine a light on specific matters that may raise policy and other concerns about government use of SCA Search Warrants. For example, in May 2013 it came to light that in 2010 the Federal Bureau of Investigation ("FBI") had successfully obtained an SCA Search Warrant requiring Google to provide it with the content of certain e-mails from the personal e-mail account of Fox News reporter James Rosen in connection with an investigation of a suspected "leak" of classified information. *See* Ann E. Marimow, *Justice Department's scrutiny of Fox News reporter James Rosen in leak case draws fire*, Wash. Post (May 20, 2013), *available at* https://perma.cc/U25E-9AFU. According to news accounts, Mr. Rosen was unaware of the warrant's existence until it was reported in *The Washington Post. See*

Ryan Lizza, *How Prosecutors Fought to Keep Rosen's Warrant Secret*, The New Yorker (May 24, 2013), *available at* http://bit.ly/1TD3How. Unsealing of the judicial documents relating to the SCA Search Warrant for Mr. Rosen's e-mail—including an affidavit in which an FBI Special Agent averred that there was "probable cause to believe" that Mr. Rosen had violated federal criminal law as "an aider and abettor and/or co-conspirator[,]" *see* Affidavit of Reginald B. Reyes, *Application for Search Warrant for E-mail Account [redacted]@gmail.com*, No. 1:10-mj-00291-AK (D.D.C., unsealed Nov. 7, 2011), ¶¶ 4–5, 39–40—provoked an outcry from the press and the public. *See* Marimow, *supra*; Aliyah Frumin, *Holder greenlit search warrant for Fox reporter's emails*, NBC (May 24, 2013), *available at* https://perma.cc/488L-TM8D.

More recently, public controversy arose from the issuance of an SCA Search Warrant that sought to compel an internet hosting company, DreamHost, Inc., to provide the internet address information of more than one million visitors to the website for the Washington, D.C.-based political organization DisruptJ20. *See Coalition: Justice Department's demand for protest website data raises privacy and civil liberty concerns*, OpentheGovernment.org (Aug. 24, 2017), *available at* https://perma.cc/2XJU-S47M (discussing coalition letter expressing concern over the request). Ultimately, the Court significantly narrowed the scope of the warrant initially sought by the government, illustrating the importance of both judicial and public oversight of the government's use of SCA Search Warrants. *See* Laurel Wamsley, *Judge Limits DOJ's Warrant For Records From Anti-Trump Site*, NPR (Oct. 11, 2017), *available at* https://n.pr/2lNkxcn.

These are just some of the reasons why judicially authorized mechanisms for federal law enforcement to obtain electronic communications records, including SCA Search Warrants, and the secrecy surrounding them, are the subject of extensive and ongoing media and public interest. *See, e.g.,* Spencer S. Hsu, *This Judge Just Released 200 Secret Government Surveillance*

*Requests*, Wash. Post (Oct. 24, 2016) (discussing a case brought by the Reporters Committee and

journalist Jason Leopold in the U.S. District Court for the District of Columbia seeking unsealing

of, among other things, SCA Search Warrant materials), *available at* https://perma.cc/4USX-

U87S; Peter J. Henning, *Digital Privacy to Come Under Supreme Court's Scrutiny*, N.Y. Times

(Jul. 10, 2017) (discussing cases addressing the scope of government surveillance authority

under the SCA), *available at* https://nyti.ms/2u13MAk.  Access to court dockets and other

judicial documents from SCA Search Warrant matters filed in this district in 2017 will provide

journalists, researchers, and academics one full calendar year of data to evaluate, enabling them

to inform the public about issues of significant public concern.

**III.  SCA Search Warrant materials are presumptively open under the common law.**

Courts in this Circuit often look to the common law right of access before determining

whether the constitutional right of access applies. *Application of Newsday, Inc.*, 895 F.2d 74, 78

(2d Cir. 1990) ("To determine whether there is [a right of access]," courts "first look to the

common law, for [they] need not, and should not, reach the First Amendment issue if judgment

can be rendered on some other basis.").

District courts in this Circuit have previously held that because search warrant materials

are judicial records, the common law presumption of access applies to them. *See All Funds on

Deposit*, 643 F. Supp. 2d at 583–84 (holding that the common law presumption of access

attached to search warrant affidavits); *In re Search Warrant*, 2016 WL 7339113, at *3 (holding

that the common law presumption of access applies to search warrant applications and

supporting affidavits); *see also In re Sealed Search Warrants Issued June 4 and 5, 2008*, 2008

WL 5667021, at *2 (N.D.N.Y. Jul. 14, 2008) (holding that search warrant applications,

supporting affidavits, and search warrant returns were judicial documents to which the common

law presumption of access applied).  In *Application of Newsday, Inc.*, the Second Circuit presumed the common law right of access applied to a search warrant affidavit containing information obtained by a wiretap where the warrant had already been executed and the subject of the wiretap had entered into a plea bargain.  895 F.2d at 79.  In doing so, the Second Circuit explained that "the fact that search warrants are commonly filed under seal until the warrant is executed does not change their status as public documents."  *Id.*

Other federal courts of appeals have almost uniformly determined that search warrant materials in closed investigations are judicial records to which the common law right of access applies.  *See In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012) (recognizing a qualified common law right of access to search warrant proceedings); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (recognizing a common law right of access to search warrant materials); *In re EyeCare Physicians of America*, 100 F.3d 514, 517 (7th Cir. 1996) (same); *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (same, for search warrant materials from closed investigations).

Once a court determines that a record is a judicial record to which the common law presumption of access applies, the court then "must determine the weight of the presumption of access."  *Erie Cty.*, 763 F.3d at 239.  The "weight" is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *Id.* (quoting *Amodeo*, 71 F.3d at 1049).  As explained above, because a court's decision to grant or deny an application for an SCA Search Warrant is based entirely on the application and other materials submitted by the government, such materials are necessary to the exercise of Article III judicial power; the value of access to such materials for the public is thus profound.  *See In re Search Warrant*, 2016 WL 7339113, at *3

("Search warrants and associated documents go to the heart of the judicial function..."). Indeed, where, as here, materials "directly affect an adjudication" and "are used to determine litigants' substantive legal rights," the common law presumption of access is "at its zenith" and may be overcome "only by extraordinary circumstances." *Bernstein*, 814 F.3d at 142 (quoting *Lugosch*, 435 F.3d at 121, and *Amodeo*, 71 F.3d at 1048).

The fact that search warrant materials relate to law enforcement investigations does not diminish the public's interest in access under the common law analysis. To the contrary, it enhances it. *See In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991) ("Society has an understandable interest . . . in law enforcement systems and how well they work," and the "public has legitimate concerns about methods and techniques of police investigation . . ."). In short, the "common law presumption of access to [a] search warrant and related materials" is "entitled to great weight." *In re Search Warrant*, 2016 WL 7339113, at *3.

Having determined the weight to be accorded the common law presumption of access, courts must next balance any competing interests against disclosure. Where the common law right of access applies, judicial documents may be kept under seal only if "countervailing factors in the common law framework . . . so demand." *Lugosch*, 435 F.3d at 124 (internal quotations omitted). In this Circuit, courts evaluating whether to seal judicial records subject to the common law right of access consider the following to be countervailing factors: "the danger of impairing law enforcement or judicial efficiency," *Amodeo*, 71 F.3d at 1050, "the privacy interests of those resisting disclosure," *id.*, and the possibility that disclosure would "reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets," *Bernstein*, 814 F.3d at 143. None of these factors apply to the judicial documents sought to be unsealed by the Reporters Committee.

First, the Reporters Committee seeks access to court dockets for all SCA Search Warrant matters filed in this district in 2017. Docket sheets provide "a kind of index to judicial proceedings and documents"; they serve as "a map of the proceedings in the underlying" matter. *Pellegrino*, 380 F.3d at 93, 95. And, as the Second Circuit explained in holding that the First Amendment affords a constitutional right of access to dockets, public dockets are part of our "national heritage": "Since the first years of the Republic, state statutes have mandates that clerks maintain records of judicial proceedings in the form of docket books, which were presumed open either by common law or in accordance with particular legislation." *Pellegrino*, 380 F.3d at 94; *see also United States v. Mendoza*, 698 F.3d 1303, 1306 (10th Cir. 2012) (discussing the history of open dockets and noting that "[t]his supposition that dockets are public records has a long pedigree"). This long tradition of public access to court dockets speaks to the important role such access plays in the proper functioning of the judicial system. Court dockets "furnish an 'opportunity both for understanding the system in general and its workings in a particular case.'" *Pellegrino*, 380 F.3d at 95 (quoting *Richmond Newspapers*, 448 U.S. at 527). Moreover, without public access to docket sheets, "the ability of the public and press to attend civil and criminal cases" and, similarly, to assert their presumptive right to inspect judicial documents, "would be merely theoretical." *Pellegrino*, 380 F.3d at 93–94.

Docket sheets are thus in the "top drawer of judicial records" that are "hardly ever closed to the public." *In re Sealing & Non-Disclosure of PR/TT/2703(D) Orders*, 562 F. Supp. 2d 876, 886, 891 (S.D. Tex. 2008). No countervailing factors override the public's strong presumptive right of access to search warrant dockets; basic docket information need not—and generally does not—include information that would "reveal details of an ongoing investigation" or "pose a risk to witnesses." *Bernstein*, 814 F.3d at 143; *see also Pellegrino*, 380 F.3d at 96 ("'There are

probably many motions and responses thereto that contain no information prejudicial to a defendant, and we cannot understand how the docket entry sheet could be prejudicial'") (quoting *In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990)). Moreover, to the extent information reflected on a particular docket would reveal details of an ongoing investigation, redaction is available. Providing public access to the dockets for SCA Search Warrant matters filed in 2017 thus will not implicate privacy interests or jeopardize ongoing investigations.

Second, while Petitioner seeks public dockets for *all* SCA Search Warrant matters filed in 2017, Petitioner seeks unsealing of applications and other judicial documents for those matters *only* to the extent that their associated investigations are now closed. Where the relevant criminal investigations have concluded, law enforcement interests are no longer implicated. And even assuming, *arguendo*, that information in a particular search warrant application or related judicial document from a no-longer active investigation might reveal sensitive law enforcement information, the proper remedy is redaction, not wholesale sealing. *See, e.g., In re Search Warrant*, 2016 WL 7339113 at *4 (agreeing to release search warrant materials with redactions to protect the identities of government special agents).

## IV. The First Amendment also affords a right of access to SCA Search Warrant materials.

The First Amendment right of access also applies here. *Lugosch*, 435 F.3d at 124 ("Having concluded that the common law presumption of access exists in this context, we may not avoid the question of whether a First Amendment presumption of access also exists . . ."). The First Amendment provides a qualified right of access to court proceedings, *Richmond Newspapers*, 448 U.S. at 580–81. Grounded in the history of open criminal trials, *id.* at 564–69, the presumption of openness guaranteed by the First Amendment "ensure[s] th[e] constitutionally protected 'discussion of governmental affairs' is an informed one." *Globe*

*Newspaper Co. v. Superior Court*, 457 U.S. 596, 604–05 (1982) (quotation omitted). As compared to the common law right, the First Amendment imposes a "higher constitutional burden"; its more "stringent" framework provides even stronger protection for the public's interests in access. *Lugosch*, 435 F.3d at 124 (citing *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988)); *see also Newsday LLC*, 730 F.3d at 163 (recognizing that the presumptions in favor of public access include "a strong form rooted in the First Amendment and a slightly weaker form based in federal common law").

To determine if a First Amendment right attaches to a judicial document, the Second Circuit has articulated two independent approaches. *Lugosch*, 435 F.3d at 120. First, courts apply a two-pronged "experience" and "logic" test. *See, e.g., Press-Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"). This test requires consideration of (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 1, 8, 9. If both questions are answered affirmatively, the constitutional right of access applies. *Lugosch*, 435 F.3d at 120. Second, courts may "consider the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Bernstein*, 814 F.3d at 141 (quoting *Lugosch*, 435 F.3d at 120). Where the judicial document at issue comes into existence before court proceedings have commenced, the constitutional right of access should be evaluated under the two-pronged experience and logic test. *See id.* Because SCA Search Warrant applications are case initiating documents, the experience and logic test applies.

Applying the experience prong, courts in other circuits have recognized that "warrant materials . . . have historically been available to the public" post-investigation, as demonstrated

17

by the "routine historical practice" of filing warrant applications and receipts with the clerk of court without seal. *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 87 (D.D.C. 2008) ("*In re N.Y. Times*"); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("*In re Gunn*") (stating that "search warrant applications and receipts are routinely filed with the clerk of court without seal"); *Goetz*, 886 F.2d at 64 (the Fourth Circuit noting that "[f]requently— probably most frequently—the warrant papers including supporting affidavits are open for inspection by the press and public in the clerk's office after the warrant has been executed"). A district court in this Circuit has likewise recognized that search warrant applications "generally are unsealed at later stages of criminal proceedings, such as upon the return of the execution of the warrant or in connection with post-indictment discovery." *All Funds on Deposit*, 643 F. Supp. 2d at 581. That SCA Search Warrants apply to electronic rather than physical records does not change the analysis.

Logic also strongly supports a First Amendment right of access. Access to search warrants "plays a significant positive role in the functioning of the criminal justice system, at least in the post-investigation stage," and "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re N.Y. Times*, 585 F. Supp. 2d at 90; *see also In re Gunn*, 855 F.2d at 573 ("[P]ublic access to documents filed in support of search warrants . . . may operate as a curb on prosecutorial or judicial misconduct."). Increased transparency will also enable judges to more effectively perform their oversight function when it comes to law enforcement use of SCA Search Warrants, which can be used to obtain such private communications as e-mail content. *See* Smith, *Gagged, Sealed & Delivered* at 315 (explaining that, due to the lack of transparency with respect to ECPA matters,

"magistrate judges are given no guidance in how to interpret or apply ECPA's complex provisions, and law enforcement is given free rein to push its surveillance power to whatever limits it chooses to recognize").

The Second Circuit has not directly addressed whether the First Amendment right of access applies to search warrant materials in a closed investigation.  And those federal appellate courts that have declined to find a constitutional right of access to search warrant materials have done so in the context of ongoing investigations—not in the context of closed investigations. *Compare In re Gunn*, 855 F.2d at 573 (the Eighth Circuit finding a right of access even while an investigation is ongoing), *with Times Mirror Company v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989) (rejecting the constitutional right of access to pre-indictment materials while expressly reserving the question of whether there is a First Amendment right of access to warrant materials after the investigation has concluded or indictments have been returned), *and Goetz*, 886 F.2d at 62 (finding no constitutional right of access and stating that the question presented was whether the First Amendment right of access applied during the time between the execution of the warrants and the indictment).

In the context of closed investigations, district courts, including in this Circuit, have found or presumed a First Amendment right of access to search warrant materials. *See, e.g., United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011) (finding a First Amendment right of access to search warrant materials post-investigation and post-indictment); *United States v. Kott*, 380 F. Supp. 2d 1122, 1124–25 (C.D. Cal. 2004), *aff'd on other grounds*, 135 Fed. App'x 69 (9th Cir. 2005) (same); *In re N.Y. Times*, 585 F. Supp. 2d at 87 (then-chief judge of the U.S. District Court for the District of Columbia holding that "both the common law and the First Amendment afford the press and the public a qualified right of access to inspect

warrant materials following the close of an investigation"); *In re Sealed Search Warrants Issued June 4 and 5, 2008*, 2008 WL 5667021, at *5 n.3 (presuming that the First Amendment right of access applies to search warrants materials). In *Loughner*, for example, the district court found that the constitutional right of access to search warrant materials attaches once the investigation is closed and the indictment has been issued. 769 F. Supp. 2d at 1193. Addressing the experience prong, the district court found that the "clear trend" supported a constitutional right of access to search warrant materials. *Id.* at 1193. Addressing the logic prong, the court found that "even after the fact," public scrutiny of search warrant materials could "further the public's interest in understanding the justice system" and "may also serve to deter unreasonable warrant practices, either by the police or the courts." *Id.* at 1193–94 (citations omitted).

One district court outside of this Circuit has declined to find a First Amendment right of access to SCA Search Warrant materials even in the context of closed investigations, concluding that the common law presumption of access, only, applies. *See Matter of Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 2018 WL 1129660 (D.D.C. Feb. 26, 2018) ("*Leopold*"). In applying the experience prong of the experience and logic test, the U.S. District Court for the District of Columbia in *Leopold* acknowledged that "the public has indeed had access to post-execution search warrant materials," but concluded that SCA Search Warrants are not "analogous to traditional search warrants under Rule 41 of the Federal Rules of Criminal Procedures," and therefore that the experience of openness as to traditional search warrants did not apply. *Id.* at *14–16. In short, the district court in *Leopold* found that SCA Search Warrants are not search warrants. *Id.* at *17 ("An SCA warrant, though a warrant in name, is more analogous to a subpoena than to a traditional search warrant . . ."). The district court's conclusion in *Leopold*, in addition to not being binding on this Court, directly conflicts with the

Second Circuit's reasoning in *Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197, 214–215 (2d Cir. 2016) ("*Microsoft*") ("Warrants and subpoenas are, and have long been, distinct legal instruments. . . . We see no reasonable basis in the statute from which to infer that Congress used 'warrant' to mean 'subpoena.' . . . We see no reason to believe that Congress intended to . . . replace the traditional warrant with a novel instrument . . ."), *cert. granted sub nom. United States v. Microsoft Corp.*, 138 S. Ct. 356, 199 L. Ed. 2d 261 (2017), *and vacated and remanded sub nom. United States v. Microsoft Corp.*, 138 S. Ct. 1186 (2018).[4]

The First Amendment right of access applies to search warrant materials, including SCA Search Warrant materials, at least when their related investigation is closed.  And, once the First Amendment right of access applies, the burden carried by the party seeking to maintain secrecy is a heavy one.  A document to which the First Amendment right of access applies may remain under seal only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Press-Enterprise II*, 478 U.S. at 13–14 (quoting *Press-Enterprise I*, 464 U.S. at 510).  Thus, to justify maintaining SCA Search Warrant materials under seal, there must be "specific, on-the-record findings that sealing is necessary to preserve higher values and only of the sealing order is narrowly tailored to achieve that aim."  *Lugosch*, 435 F.3d at 124 (citing *In re New York Times*

---

[4] *Microsoft* addressed the extraterritorial application of the SCA; it was ultimately vacated as moot after the Supreme Court granted *certiorari* because an intervening statute—which amended the SCA but notably did not amend the relevant language regarding SCA Search Warrants—resolved the question presented in that case. *See generally United States v. Microsoft Corp.*, 138 S. Ct. 1186 (2018).  Though vacated, the Second Circuit's decision in *Microsoft* remains instructive here because the government had urged—and the Second Circuit rejected—the precise argument that the district court in *Leopold* adopted:  that SCA Search Warrants are not, in fact, warrants.  *Microsoft*, 829 F.3d at 214.

*Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).  Showing "reasonable likelihood" that a higher value may be harmed is insufficient; there must be a "substantial probability" of harm.  *Press-Enterprise II*, 478 U.S. at 14.

As discussed above with respect to the common law analysis, there are no countervailing factors—let alone a substantial probability of harm to a compelling interest—that would justify continued wholesale sealing of the SCA Search Warrant materials that the Reporters Committee seeks to unseal.  In the context of closed investigations, no law enforcement or due process concerns are at issue.  And, in any event, the government can, if necessary in a given matter, seek partial rather than complete unsealing after the close of an investigation.  In sum, the relief sought by the Reporters Committee, if granted, will result in the public obtaining essential information about SCA Search Warrant practices in this district, but will not reveal details of any ongoing criminal investigation.

## CONCLUSION

For the reasons set forth in its Application and herein, the Reporters Committee respectfully requests that the Court grant the relief set forth in their concurrently filed Proposed Order.

Dated:  July 2, 2018

                              Respectfully submitted,

                              /s/ Katie Townsend
                              Katie Townsend
                              THE REPORTERS COMMITTEE FOR
                                FREEDOM OF THE PRESS
                              1156 15th St. NW, Suite 1250
                              Washington, DC 20005
                              Phone: 202.795.9300
                              Facsimile: 202.795.9310
                              ktownsend@rcfp.org

                              *Counsel of Record for the Reporters
                              Committee for Freedom of the Press*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Application to Unseal Certain Search Warrant

Applications and Related Judicial Documents was filed with the Clerk of Court and Sitting

Magistrate Judge via Federal Express (FedEx), and copies served on the following via U.S. Mail:


United States Attorney Geoffrey S. Berman
The United States Attorney's Office
Southern District of New York
Main Office/Criminal Division
One St. Andrew's Plaza
New York, NY 10007


This the 2nd day of July, 2018.


                                        /s Katie Townsend
                                        Katie Townsend

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE
APPLICATION OF THE REPORTERS
COMMITTEE FOR FREEDOM OF THE
PRESS TO UNSEAL CERTAIN
ELECTRONIC SURVEILLANCE
APPLICATIONS AND ORDERS

Misc. Action No. _____

## [DRAFT] PROPOSED ORDER

This matter coming before the Court upon the Application of the Reporters Committee for Freedom of the Press (the "Reporters Committee") to unseal court dockets and certain other judicial documents for one calendar year of search warrants sought by government entities pursuant to the Stored Communications Act ("SCA"), *see* 18 U.S.C. §§ 2701–2712 (hereinafter, "SCA Search Warrant materials").

Specifically, by its Application, the Reporters Committee seeks an Order directing the Clerk of the Court to make public the dockets and docket entries reflecting all applications and related judicial documents filed with the U.S. District Court for the Southern District of New York concerning any SCA Search Warrant materials sought in 2017. In addition, the Reporters Committee seeks to unseal all applications and related judicial documents, including affidavits, for any SCA Search Warrant sought in 2017 in connection with any now-inactive criminal investigation.

Upon consideration of the Application, the memorandum of points and authorities filed by the Reporters Committee, and the entirety of the record before the Court in this matter, it is hereby **ORDERED** as follows:

(1) The Office of the Clerk of the U.S. District Court for the Southern District of New York (the "Clerk's Office") is hereby directed to unseal the dockets and docket entries reflecting all applications and other judicial documents concerning any SCA Search Warrant sought by a government entity from January 1, 2017, to December 31, 2017, inclusive;

(2) The Clerk's Office is hereby directed to unseal all applications and other judicial documents, including affidavits, concerning any SCA Search Warrant sought by a government entity from January 1, 2017 to December 31, 2017, inclusive, in connection with any now-inactive criminal investigation.

**SO ORDERED** this _____ day of _____, 2018

_____

Judge of the United States District Court
for the Southern District of New York